Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY MICHAEL CONNELL,<br><br>                    Petitioner,<br><br>                    v.<br><br>PATRICK NOGAN,<br><br>                    Respondent. | Civil Action No.: 19-6924 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court upon the filing by *pro se* Petitioner Timothy Michael Connell ("Petitioner") is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). (D.E. No. 1 ("Petition" or "Pet.")). When he filed his Petition, Petitioner was incarcerated at Northern State Prison ("NSP"), Newark, New Jersey, and there was a detainer lodged or placed against him by the United States Parole Commission ("USPC"). Respondent answered the Petition. (D.E. No. 4 ("Resp.")). Petitioner filed a letter reply, (D.E. No. 5 ("Letter Reply" or "Ltr. Reply")), as well as subsequent correspondence related to his Petition. (D.E. No. 11 ("April 19, 2022 Letter" or "Apr. 19, 2022 Ltr."); D.E. No. 13 ("Feb. 3, 2025 Ltr."); D.E. No. 14 ("February 26, 2025 Letter" or "Feb. 26, 2025 Ltr.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **DENIES** the Petition.

**I.    BACKGROUND**

In 1983, Petitioner was sentenced to a total term of 25 years of imprisonment for obstruction of justice in violation of 18 U.S.C. § 1502–03, conspiracy to commit obstruction of

justice in violation of 18 U.S.C. § 371, and illegal use of a firearm to commit a felony in violation of 18 U.S.C. 924(c)(1)–(2). (D.E. No. 4-2, Ex. 1 to Decl. of Gregory J. Thornton ("Thornton Decl.") at 1). On May 23, 1997, Petitioner was mandatorily released from federal prison pursuant to 28 C.F.R. § 2.35(a). (*Id.*, Ex. 2 to Thornton Decl. ("Computation Data") at 5 & D.E. No. 4-1, Thornton Decl. ¶ 7). On the date of his initial release, Petitioner's term of imprisonment was set to expire on December 3, 2007. (Computation Data at 6 & Thornton Decl. ¶ 8).

On April 20, 2001, the USPC ordered Petitioner to complete a 180-day residential treatment program. (D.E. No. 4-2, Ex. 7 to Thornton Decl. at 1 & Ex. 8 to Thornton Decl. at 1). He was credited with 180 days of confinement credit for the time he spent in the residential program and was released on November 10, 2001. (Computation Data at 3–4).

On August 8, 2002, the USPC issued a parole violator warrant for unauthorized possession of a firearm, associating with a person having a criminal record, and leaving his assigned district without the permission of his probation officer. (D.E. No. 4-2, Ex. 9 to Thornton Decl. at 1 & Ex. 10 to Thornton Decl. at 1). It supplemented this warrant with additional charges of failure to report a change in residence, falsifying supervision reports, violating a special parole condition with respect to alcohol use, and operating a motor vehicle under the influence of alcohol. (*Id.*, Ex. 11 to Thornton Decl. at 1 & Ex. 12 to Thornton Decl. at 1).

A revocation hearing was conducted on October 29, 2002. (*Id.*, Ex. 13 to Thornton Decl. at 2). On November 13, 2002, the USPC found that Petitioner violated five conditions of release (associating with a person having a criminal record, leaving the district without permission, falsifying supervision reports, operating a motor vehicle under the influence of alcohol/drugs, violation of a special condition, and driving under the influence of alcohol). (*Id.* at 1–2). It revoked Petitioner's term of mandatory release, found that he was not to receive credit for the time he spent

on supervision, ordered him to serve 14 months of imprisonment, and set Petitioner's parole date to October 27, 2003. (*Id.* at 1). After filing a supplemental charge that Petitioner purchased two boxes of ammunition and conducting another hearing on July 14, 2003 to reconsider its initial revocation decision, the USPC found on July 30, 2003 that Petitioner additionally violated a condition of release by possessing ammunition and ordered him to serve 30 months of imprisonment for his violations (with his parole date set at February 27, 2005). (*Id.*, Ex. 16 to Thornton Decl. at 1). Petitioner appealed this decision, and the USPC's National Appeals Board affirmed on September 25, 2003. (*Id.*, Ex. 17 to Thornton Decl. at 1).

Petitioner was released from federal prison on February 25, 2005, and, on the day of his release, his term of imprisonment for the original 1983 conviction was set to expire on March 7, 2013. (Computation Data at 2).

On September 14, 2009, the USPC issued a parole violator warrant related to Petitioner's alleged commission of a bank robbery in Blackwood, New Jersey, on August 28, 2009. (D.E. No. 4-2, Ex. 18 ("Sept. 14, 2009 Warrant Appl.") to Thornton Decl. at 1 & Ex. 19 to Thornton Decl. at 1). As of that date, Petitioner was incarcerated at the Camden County Jail on state bank robbery charges. (Sept. 14, 2009 Warrant Appl. at 1).

On or about August 22, 2012, the USPC notified the warden of FCI Fort Dix by letter that the warrant was lodged as a detainer. (D.E. No. 4-2, Ex. 21 ("August 22, 2012 Letter" or "Aug. 22, 2012 Ltr.") to Thornton Decl. at 1). In a declaration, Gregory J. Thornton, an assistant general counsel with the USPC familiar with Petitioner's case history, stated that, "[i]n attempting to notify Petitioner of the 'on the record' dispositional review, the USPC committed a technical error and

3

incorrectly sent the notification documents to Fort Dix FCI rather than Petitioner's [then-current] New Jersey state facility." (Thornton Decl. ¶ 23).

In its August 22, 2012 Letter, the USPC noted that Petitioner, "who is presently serving a sentence in your institution, is wanted by this office as a parole violator," and the USPC "ha[s] been advised by the U.S. Marshal's Service that the violator warrant has been placed as a detainer at your institution." (Aug. 22, 2012 Ltr. at 1). The correspondence stated that, pursuant to 18 U.S.C. § 4214(b)(1) ("Section 4214(b)(1)"), the USPC would conduct an "'on the record' dispositional review of this case to determine whether the violator warrant should remain as a detainer." (*Id.*). Attached to the letter was a Parole Form H-13 (Notice of Pending Dispositional Review on the Record), which the prisoner was to complete and return to the USPC with any comments he wished to submit regarding the disposition of the detainer. (*Id.*; *see also* D.E. No. 4-2, Ex. 22 ("August 22, 2012 Notice of Pending Dispositional Review on the Record" or "Aug. 22, 2012 Notice of Pending Dispositional Review on the R.") to Thornton Decl.). This attached document had the notation "N/A" in the space for the date "[the] USPC [Was] Advised of [the] Detainer." (Aug. 22, 2012 Notice of Pending Dispositional Review on the R. at 1 (emphasis omitted)).

The August 22, 2012 Letter also stated that the prisoner may have an attorney assist him in preparing the written submission, and a Form CJA-22 was enclosed to be completed by the prisoner and submitted to the Magistrate Judge with jurisdiction over the warden's institution (a copy of the completed form forwarded to the USPC). (Aug. 22, 2012 Ltr. at 1; *see also* D.E. No. 4-2, Ex. 22 ("August 22, 2012 Form CJA-22" or "Aug. 22, 2012 Form CJA-22") to Thornton Decl.) The letter explained that "[t]he Commission must conduct this review within 180 days of notification of the detainer. Therefore, the information must be returned to the Commission within

4

30 days, or as soon as possible, especially if the prisoner requests the assistance of counsel." (Aug. 22, 2012 Ltr. at 2) (further requesting that the warden provide additional information including the prisoner's current sentence data and a current progress report).

According to a USPC warrant supplement dated June 12, 2013, Petitioner was convicted by the State of New Jersey on two counts related to the bank robbery and sentenced to 15 years, seven months on the first count, and 15 years, 3 months, and 17 days on the second count. (D.E. No. 4-2, Ex. 20 at 1).

On or about May 23, 2013, the USPC notified the warden of the state institution where Petitioner was incarcerated that Petitioner was wanted as a parole violator. USPC advised that it previously issued a violator warrant on September 14, 2009, which had been placed as a detainer at the institution against the prisoner, and, under Section 4214(b)(1), it would perform a dispositional status review to determine whether the warrant should remain as a detainer. (*Id.*, Ex. 23 ("May 23, 2013 Letter" or "May 23, 2013 Ltr.") to Thornton Decl. at 1 & Thornton Decl. ¶ 24). A Parole Form H-13, a Form CJA-22, and a State Sentence and Parole Information Form were enclosed with the May 23, 2013 Letter. (D.E. No. 4-2, Ex. 24 ("May 23, 2013 Notice of Dispositional Review on the Record" or "May 23, 2013 Notice of Dispositional Review on the R.;" "May 23, 2013 Form CJA-22;" & "May 23, 2013 State Sentence and Parole Information Form")). The attached May 23, 2013 Notice of Dispositional Review on the Record indicated that "[the] USPC [Was] Advised of [the] Detainer" on May 23, 2013. (May 23, 2013 Notice of Pending Dispositional Review on the R. at 1).

On June 27, 2013, Derrick R. Miller, the USPC's case analyst, conducted the dispositional review and recommended that the detainer stand "[b]ased on the Subject's criminal history and recent conviction." (D.E. No. 4-2, Ex. 25 ("June 28, 2013 Order") to Thornton Decl. at 1). On

5

June 28, 2013, the USPC agreed with the case analyst's recommendation. (*Id.*). The June 28, 2013 Order stated that, "[o]n May 23, 2013, the Commission received notice from the subject requesting a review of his record, and that the Commission proceeds with a revocation hearing." (*Id.*). "The Analyst also contacted New Jersey Department of Correction [sic] where he currently [sic] being held and asked for an institutional report. However, that report is still pending." (*Id.*).

On February 25, 2019,[1] Petitioner filed his Petition with this Court. He alleges three grounds or claims for relief, recited herein verbatim: (i) "The Parole Commission violated it's own Rules and Procedures under Section: 2.47(a)(2)" because the "Dispositional hearing was not conducted within 180 Day Time Frame;" (ii) "Petitioner was entitled to counsel in this matter;" and (iii) "Misconduct Committed by Case Analyst Derrick R. Miller" on the grounds that he "changed the date the Parole Commission was advised of the warrant being placed by the U.S. Marshal's Service on August 22, 2012 to May 23, 2013 to fraudulently and illegally support compliance with the 180-day time frame required to conduct the dispositional hearing." (Pet. at 6–7). Petitioner requests the withdrawal of the detainer and an order reinstating parole upon his release from custody. (*Id.* at 9).

Petitioner attached to the Petition the August 22, 2012 Letter, a completed but unsigned and undated August 22, 2012 Notice of Pending Dispositional Review on the Record, a completed, unsigned, and undated August 22, 2012 Form CJA-22, the May 23, 2013 Letter, the May 23, 2013 Notice of Dispositional Review on the Record, and the May 23, 2013 State Sentence and Parole Information Form. (D.E. No. 1-1, Riders A–D). The attached copy of the May 23, 2013 Notice of Dispositional Review on the Record had a checkmark indicating that Petitioner wished the services of an attorney to assist him in competing the form. (*Id.*, Rider-A ("Pet'r Aug. 22, 2012

---

[1] *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (holding that a *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court).

Notice of Dispositional Review on the R.") to Pet. at A-4).  Under the section for offering "information for the [USPC] to consider during its review" of the detainer, Petitioner requested the withdrawal of the detainer after satisfaction of the "Reparole Guidelines at 2.20 and 2.21" and claimed that his state sentence was concurrent with his federal violation and that the detainer acted as an impediment to obtaining "a lower status." (*Id.*).  Petitioner further asked for a "local" revocation hearing. (*Id.*).  In the August 22, 2012 Form CJA-22, Petitioner requested appointment of counsel, averring that he was unemployed, had no cash on hand or in the bank, and possessed no property.  (*Id.*, Rider-A to Pet. at A-5).

On May 13, 2019, Respondent answered the Petition.  (D.E. No. 4).  Petitioner submitted a Letter Reply, dated May 20, 2019, and an April 19, 2022 Letter, which included additional arguments in support of his Petition.  (D.E. Nos. 5 & 11).  According to his February 7, 2025 Letter, Petitioner was paroled from NSP on December 13, 2024 and was being temporarily held at F.D.C. Philadelphia because of the USPC warrant, pending his assignment to a federal prison.  (Feb. 7. 2025 Ltr. at 2).  In his February 26, 2025 Letter, Petitioner stated that he was serving "a federal parole violation of twenty four months" at FCI Raybrook, New York, which "is related to my writ" with this Court.  (Feb. 26, 2025 Ltr. at 1).  The New Jersey Department of Corrections ("NJDOC") Offender Search Database indicates that Petitioner was out of state custody on December 13, 2024.[2]  According to the Federal Bureau of Prisons ("BOP") Inmate Locator,[3]

---

[2]   NJDOC Offender Database, Offender Details, available at https://www-doc.state.nj.us/DOC_Inmate/details?x=1461944&n=0 (last visited August 14, 2025) (NJDOC SBI Number Register Number 000624559A).

[3]   *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 14, 2025) (BOP Register Number 02819-050).

7

Petitioner remains incarcerated at FCI Ray Brook, Ray Brook, New York, and has a release date of December 13, 2026.

## II.   LEGAL STANDARD

28 U.S.C. § 2241(a) states that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  However, under 28 U.S.C. § 2241(c)(3), a federal court has jurisdiction over a Section 2241 petition only if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." *See Maleng v. Cook*, 490 U.S. 488, 490 (1989).  *Pro se* filings must be liberally construed in favor of the *pro se* litigant.  *See James v. New Jersey*. No. 24-8271, 2024 WL 4212192, at *2 (D.N.J. Sept. 17, 2024).

## III.   DISCUSSION

### A.   The Dispositional Review Process

In his Petition, Petitioner claims that the USPC violated its own rules and procedures, specifically Section 2.47(a)(2) ("Section 2.47(a)(2)").  (*See* Pet. at 6–7).  Section 2.47(a)(2) governs the placement and review of parole violation detainers against parolees serving a new sentence in a state or local institution:

> (a) When a parolee is serving a new sentence in a federal, state or local institution, a parole violation warrant may be placed against him as a detainer.
>
> . . . .
>
> (2) If the prisoner is serving a new sentence in a state or local institution, the violation warrant shall be reviewed by the Regional Commissioner not later than 180 days following notification to the Commission of such placement.  The parolee shall receive notice of the pending review, and shall be permitted to submit a written application containing information relative to the disposition of the warrant.

8

> He shall also be notified of his right to request counsel under the provisions of § 2.48(b) to assist him in completing this written application.

28 C.F.R. § 2.47(a)(2).[4] "If the prisoner is serving a new state or local sentence, the Regional Commissioner, following a dispositional record review may" either:

> (1) Withdraw the detainer and order reinstatement of the parolee to supervision upon release from custody, or close the case if the expiration date has passed.
>
> (2) Order a revocation hearing to be conducted by a hearing examiner or an official designated by the Regional Commissioner at the institution in which the parolee is confined.
>
> (3) Let the detainer stand and order further review at an appropriate time. If the warrant is not withdrawn and no revocation hearing is conducted while the prisoner is in state or local custody, an institutional revocation hearing shall be conducted after the prisoner's return to federal custody.

*Id.* § 2.47(c).[5]

The statutory and regulatory scheme requires the USPC to undertake a dispositional review of the detainer within 180 days of it receiving notice of the detainer's placement against the parolee

---

[4]  28 C.F.R. § 2.48(b) provides in relevant part that, at the beginning of a preliminary interview to enable the USPC to determine whether there is probable cause to believe that the parolee has violated his parole as charged and, if so, whether a revocation hearing should be conducted, "the interviewing officer . . . shall advise the parolee that he may have the preliminary hearing interview postponed in order to obtain representation by an attorney." "The parolee shall also be advised that if he cannot afford to retain an attorney he may apply to a U.S. District Court for appointment of counsel to represent him at the preliminary interview and the revocation hearing pursuant to 18 U.S.C. 3006A." *Id.* Section 3006A governs the appointment of counsel for indigent defendants.

[5]  This regulation implements 18 U.S.C. § 4214, which states in relevant part:

> **(b)(1)** Conviction for any criminal offense committed subsequent to release on parole shall constitute probable cause for purposes of subsection (a) of this section. In cases in which a parolee has been convicted of such an offense and is serving a new sentence in an institution, a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer. Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement. The parolee shall receive notice of the pending review, have an opportunity to submit a written application containing information relative to the disposition of the detainer, and, unless

9

and an opportunity for a parolee who cannot afford to retain an attorney to apply for the appointment of counsel to assist him in completing his written response regarding the disposition of the detainer lodged against him. Nevertheless, as Respondent notes (Resp. at 7), "[i]t is well settled law that the Due Process right to a revocation hearing accrues when the warrant is executed, not when it is issued." *Riley v. Holt*, No. 04-1976, 2005 WL 1154755, at *2 (M.D. Pa. May 4, 2005) (citing *Moody v. Daggett,* 429 U.S. 78 (1976)); *see also Farmer v. Kirby*, No. 16-8657, 2019 WL 1198899, at *5 (D.N.J. Mar. 14, 2019) ("The Supreme Court in *Moody* held that a federal parolee imprisoned for a crime committed while on parole was not constitutionally entitled to a prompt parole revocation hearing at the time a parole violator warrant was issued and lodged with the institution of his confinement." (citing *Moody*, 529 U.S. at 89)), *appeal dismissed as moot*, 719 F. App'x 1009 (3d Cir. 2019) (per curiam). In *Moody*, the Supreme Court explained that the loss of liberty triggering the right to a revocation hearing does not occur until the federal parole violator warrant lodged with federal prison authorities is executed and the parolee is taken into custody under this warrant. *Moody*, 429 U.S. at 87. Like a detainer lodged with federal prison officials, "[a] detainer [placed with state officials] has no present or immediate effect upon protected liberty

---

> waived, shall have counsel as provided in subsection (a)(2)(B) of this section to assist him in the preparation of such application.
>
> **(2)** If the Commission determines that additional information is needed to review a detainer, a dispositional hearing may be held at the institution where the parolee is confined. The parolee shall have notice of such hearing, be allowed to appear and testify on his own behalf, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section.
>
> **(3)** Following the disposition review, the Commission may:
>
>> **(A)** let the detainer stand; or
>>
>> **(B)** withdraw the detainer.

Under § 4214(a)(2)(B), the USPC must provide an "opportunity for the parolee to be represented by an attorney (retained by the parolee, or if he is financially unable to retain counsel, counsel shall be provided pursuant to section 3006A) or, if he so chooses, a representative as provided by rules and regulations, unless the parolee knowingly and intelligently waives such representation."

10

interests, since the detainer 'did no more than express the [Commission's] intent to defer consideration of parole revocation to a later time.'" *Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 91 (2d Cir. 1986) (alteration in original) (quoting *Moody*, 429 U.S. at 86); *see also United States v. Mauro*, 436 U.S. 340, 358 (1978) ("Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison.").

A parolee must establish actual prejudice or bad faith to obtain habeas relief for procedural violations committed in the dispositional review process. *See Heath*, 788 F.2d at 88–90 (concluding that, to obtain habeas relief because of a failure to comply with time requirements, the petitioner must show prejudice resulting from the delay or bad faith); *Thompson v. Davis*, No. 18-16282, 2020 WL 1930505, at *4 (D.N.J. Apr. 21, 2020) ("It is settled law that a habeas petitioner must demonstrate actual prejudice resulting from alleged procedural violations.") (citing *Davis v. United States*, 411 U.S. 233, 245 (1973); *Franklin v. Fenton*, 642 F.2d 760, 764 (3d Cir. 1980)). For instance, in *Franklin*, the Third Circuit acknowledged that the parole statute "was not followed" because the petitioner's dispositional review did not occur within the applicable 180-day period. *Franklin*, 642 F.2d at 764. But the review was held three weeks beyond the statutory period, the parole violator warrant was executed, and a timely revocation hearing was conducted. *Id.* "Thus, although the Commission did not observe the requirement of a prompt dispositional review, the short delay did not result in any prejudice to the appellant, since the revocation hearing was timely. The fact that the review and hearing have been held obviate the need for any other remedy by the Court." *Id.* (citing *Smith v. United States*, 577 F.2d 1025, 1028 (5th Cir. 1978)).

### B.      Prejudice or Bad Faith

Here, the USPC conducted a dispositional review of the detainer placed against Petitioner on June 27–28, 2013.  (June 28, 2013 Order at 1–2).  It conducted that review within 180 days of the May 23, 2013 Letter notifying the warden of the state institution where Petitioner was incarcerated that:  (i) the USPC had issued a violator warrant on September 14, 2009; (ii) that warrant had been placed at the facility as a detainer against Petitioner; and (iii) it would perform a dispositional status review pursuant to the parole statute.  (May 23, 2013 Ltr. at 1).  The Court notes, however, that USPC sent out an earlier notification letter, dated August 22, 2012, and addressed to the warden of FCI Fort Dix.  (Aug. 22, 2012 Ltr. at 1).  Assuming *arguendo* that the August 22, 2012 letter triggered the 180-day period under Section 2.47(a)(2), the USPC held its dispositional review approximately four months beyond the applicable period.  It also appears uncontested that while Petitioner asked for counsel to assist him in preparing his submission for the dispositional review, no counsel was appointed.  (Pet'r Aug. 22, 2012 Notice of Dispositional Review on the R. at 1).  The Court agrees with Respondent that Petitioner fails to show prejudice or bad faith resulting from such alleged violations.  (*See* Resp. at 8–10).

Petitioner indicates that the case analyst (Miller) acted in bad faith by changing the date the USPC was advised of the placement of the warrant from August 22, 2012 to May 23, 2013 "to fraudulently and illegally support compliance with the 180-day day time frame." (Pet. at 7).  There is no evidence that the analyst (or any other USPC personnel) acted with bad faith in this matter.  In fact, the record reflects that Miller merely corrected the "technical error" that USPC made in "incorrectly sen[ding] the [August 22, 2012] documents to Fort Dix FCI rather than Petitioner's [then-current] New Jersey state facility."[6]  (Thornton Decl. ¶¶ 23–24).

---

[6]      Additionally, the August 22, 2012 Notice of Pending Dispositional Review on the Record did not specify the

Petitioner further indicates that this alleged misconduct regarding the date the USPC was advised of the detainer being lodged against Petitioner, the delay in conducting the dispositional review, and the failure to provide him with an attorney resulted in actual prejudice. (*See* Pet'r Aug. 22, 2012 Notice of Pending Dispositional Review on the R. at A-4). He specifically cites the "Reparole Guidelines" and asserts that his state sentence is concurrent with his federal violation. (*Id.* (citing 28 C.F.R. §§ 2.20 and 2.21)). But it is well established that, although a parolee receives credit for time served in state custody for reparole purposes, *see* 28 C.F.R. § 2.47(e)(1), under USPC policy, "the revoked parolee's original sentence (which due to the new conviction, stopped running upon his last release from federal confinement on parole) again start[s] to run only upon release from the confinement portion of the new sentence or the date of reparole granted pursuant [to] these rules, whichever comes first." *Id.* § 2.47(e)(2); *Cloyd v. Shartle*, No. 14-2794, 2017 WL 368416, at *3 (D.N.J. Jan. 24, 2017) ("In other words, while Petitioner's time in state custody was properly used in calculating his reparole guidelines, it did not count towards service of his D.C. sentence. 28 C.F.R. § 2.47(e)(1)-(2). Service towards the D.C. sentence ended on August 21, 2002 and did not resume until June 6, 2013.").

According to the Petitioner, the placement of the detainer implicates a liberty interest because it negatively affected his "status" in the state prison, specifically his ability to maximize work credits to reduce his state sentence. (*See* Apr. 19, 2022 Ltr at 2). "These collateral consequences of the detainer do not, however, rise to the level of a constitutional deprivation for which habeas relief can be granted." *Mathis v. Kaufman*, No. 19-1377, 2019 WL 4594105, at *2 (M.D. Pa. Sept. 20, 2019) (footnote omitted) (rejecting the petitioner's argument that "the imposition of the detainer and delay in executing the warrant deny him the opportunity to

---

date USPC was advised of the placement of the detainer. (Aug. 22, 2012 Notice of Pending Dispositional Review on the R. at 1).

13

participate in prison rehabilitation and early release programs, which Petitioner contends is a deprived liberty interest without due process."); *see also Moody*, 429 U.S. at 88 n.9 (concluding that the pending detainer's effects on prisoner classification and eligibility for rehabilitative programs does not "activate" a due process right); *Buckner v. U.S. Marshal*, No. 24-1166, 2024 WL 3915101, at *3 (C.D. Cal. Jul. 17, 2024) ("Petitioner contends that he has a due process right to challenge the federal detainer because it prevents him from earning good conduct credit . . . . However, prisoners do not have a constitutionally protected liberty interest in the opportunity to earn good conduct credit.") (citations omitted), *R&R adopted by* 2025 WL 551657 (C.D. Cal. Feb. 12, 2025).

Similarly, to the extent that Petitioner was not provided counsel to assist him in the dispositional review, (*see* Ltr. Reply at 1), there is no Sixth Amendment right to counsel in parole revocation proceedings. *See Williams v. United States*, No. 19-20511, 2023 WL 4738810, at *12 (D.N.J. Jul. 24, 2023); *Coates v. Hogsten*, No. 07-424, 2007 WL 3125125, at *6 (M.D. Pa. Oct. 24, 2007).

In any event, even if Petitioner has shown "adverse effects [that] may constitute prejudice," he fails to establish that such effects were the "results" of the alleged procedural violations. *Heath*, 788 F.2d at 90 ("While these adverse effects may constitute prejudice, the prejudice results not from any delay which may have occurred from the procedures followed, but rather from the Commission's decision to leave the detainer in place after the hearing. *See Spotted Bear v. McCall*, 648 F.2d 546, 547–48 (9th Cir.1980) (effect of federal detainer on the inmate's eligibility for rehabilitative programs was prejudicial, but this prejudice resulted from the inmate's state conviction, not delay in holding a revocation hearing)."). In this case, Petitioner's dispositional review was conducted only four months after the expiration of 180-day period. In his review, the

case analyst noted that the USPC "received notice from the subject requesting a review of his record, and that the Commission proceeds with a revocation hearing;" however, based on Petitioner's criminal history and recent state conviction, the analyst recommended (and the USPC agreed) to "Let the Detainer Stand." (June 28, 2013 Order at 2) (emphasis omitted). According to Petitioner's correspondence with this Court, once Petitioner was paroled on his state sentence, the USPC executed the parole violator warrant, took Petitioner into custody, conducted a revocation hearing, and revoked his parole.[7] (Feb. 3, 2025 Ltr. at 2; Feb. 26, 2025 Ltr. at 1). He is currently "serving a federal parole violation [sentence] of twenty four months." (Feb. 26, 2025 Ltr. at 1). Accordingly, "the fact that the [dispositional] review and [revocation] hearing have been held obviate the need for any other remedy by the Court." *Franklin*, 642 F.2d at 764 (citation omitted).

Because Petitioner fails to show bad faith or prejudice related to the alleged procedural violations, his request for habeas relief must be denied.

IV.   **CONCLUSION**

For the reasons stated above, the Court **DENIES** the Petition. An appropriate order follows.

**Dated: August 14, 2025**

s/ Esther Salas<br>**Esther Salas, U.S.D.J.**

---

[7] Petitioner does not suggest that the USPC revoked his parole without conducting the requisite revocation hearing. *See* 28 C.F.R. § 2.47(c)(3) ("If the warrant is not withdrawn and no revocation hearing is conducted while the prisoner is in state or local custody, an institutional revocation hearing shall be conducted after the prisoner's return to federal custody.").